THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

NORTHEAST PENNSYLVANIA         :
SMSA LP, d/b/a VERIZON WIRELESS,   :
                               :
        Plaintiff,             :
                               :
    v.                         :    3:17-CV-1521
                               :    (JUDGE MARIANI)
THE SMITHFIELD TOWNSHIP BOARD  :
OF SUPERVISORS,                :
                               :
        Defendant.             :

## MEMORANDUM OPINION

### I. INTRODUCTION

This is an action for alleged violations of the Telecommunications Act of 1996

("TCA"), 47 U.S.C. § 332(c)(7)(B), and an appeal under Pennsylvania's Municipalities

Planning Code ("MPC"), 53 Pa. Stat. and Cons. Stat. Ann. §§ 10101, *et seq.,* from a denial

of an application to place a wireless communications facility in Monroe County,

Pennsylvania.  Plaintiff Northeast Pennsylvania SMSA LP, d/b/a Verizon Wireless (the

"Plaintiff" or "Verizon"), filed its Complaint, (Doc. 1), on August 25, 2017, against Defendant

Smithfield Township Board of Supervisors (the "Defendant" or "Board").  Verizon alleges

that the Board's decision to deny Verizon permission to build a ninety-five foot high

monopole on property in Smithfield Township violates the TCA because its decision was not

supported by "substantial evidence," 47 U.S.C. § 332(c)(7)(B)(iii), and because its decision

"prohibit[ed] or [had] the effect of prohibiting the provision of personal wireless services," 47

U.S.C. § 332(c)(7)(B)(i)(II).  Claiming the Court's supplemental jurisdiction, Verizon also alleges that the Board violated the MPC because its decision was not based on substantial evidence.

On November 16, 2017, the Board filed a Motion to Dismiss (Doc. 8), which this Court subsequently denied (Doc. 17).  On November 16, 2018, the Board filed a motion for summary judgment (Doc. 21).  Thereafter, Verizon filed a cross-motion for summary judgment (Doc. 26).  Both motions have been fully briefed, and the motions are ripe for disposition.  For the reasons stated herein, this Court will grant summary judgment in favor of Verizon on the substantial evidence claim under the TCA and under the MPC.  In so doing, the Court also will deem the prohibition of service claim moot.

## II. Factual and Procedural History[1]

Verizon has been authorized by the Federal Communications Commission ("FCC") to operate a wireless telephone communication system within its designated frequency

---

[1] The Court notes that although Verizon properly followed Local Rule 56.1, which the Board properly answered (Doc. 31), the Board did not properly follow Local Rule 56.1 by filing its own separate concise statement of material facts.  Accordingly, Verizon filed an answer to the Board's motion for summary judgment (Doc. 21) because "Defendant failed to file a Local Rule 56.1 Concise Statement" (Doc. 29).  The Court will consider these submissions.

However, the Court also notes that, given the nature of the claims, the Court's review is limited to the record created by the Board.  Thus, by the nature of this case, there cannot be any outstanding issues of material fact as the Court will rely on the Board's record.  *See Omnipoint Commc'ns, Inc. v. Penn Forest Twp.,* 42 F. Supp. 2d 493, 498 (M.D. Pa. 1999) ("Essentially, the Telecommunications Act of 1996 authorizes a federal court to hear appeals from zoning board decisions.  The record for review of the zoning ruling is compiled by the zoning board.  It is therefore appropriate to adjudicate such an appeal on a summary judgment motion, with the administrative record providing the undisputed factual basis for the federal court's decision.").

spectrum in Monroe County, Pennsylvania.[2]  (Doc. 27, at ¶ 2; Doc. 31, at ¶ 2).  As a

licensed FCC wireless telephone communication system operator, Verizon is obligated to

provide reliable wireless telephone services to its customers.  (Doc. 27, at ¶ 3; Doc. 31, at ¶

3).  Verizon operates its system pursuant to the rules and regulations set forth by the FCC

and the Federal Aviation Administration ("FAA").  (Doc. 27, at ¶ 4; Doc. 31, at ¶ 4).  As an

FCC licensed operator, Verizon "must ensure that its telephone signal strength and wireless

capacity is sufficient to provide proper reception and communication within its licensed

area."  (Doc. 27, at ¶ 5; Doc. 31, at ¶ 5).

Verizon entered into a lease agreement with RR2 Airport Road, LLC, for a 75′ x 75′

parcel of land located at 119 Airport Road in Smithfield, PA.  (Doc. 27, at ¶ 8; Doc. 31, at ¶

8).  The agreement permits the use of the premises for constructing, maintaining and

operating a communications facility.  (Doc. 27, at ¶ 9; Doc. 31, at ¶ 9).

On February 23, 2017, pursuant to the MPC and the Zoning Ordinance of the

Smithfield Township, Monroe County, §§ 101 *et seq.* (hereinafter "Ordinance"), Verizon

submitted a conditional use application to the Board for the construction of a

---

[2] While Defendant has denied the allegation and disputes that Verizon presented a valid FCC
license (Doc. 31, ¶ 2), this fact was not at issue in the underlying Decision issued by the Board on July 25,
2017. As Plaintiff correctly highlights, "[b]ecause the Board did not include this reason as justification for the
denial of Verizon's conditional use Application, it cannot attempt to include this claim in support of its
denial."  (Doc. 33, at 12 (citing *Sojitori v. Douglass Twp. Bd. of Supervisors*, 296 A.2d 532, 534 (1972);
*Ramsey v. Zoning Hearing Bd.*, 466 A.2d 267, 269 n.3 (1983)).  Furthermore, although the document
produced by Plaintiff is "not an official FCC license," Defendant provides no reason as to why the document
is inadequate for the purposes of the Board's hearing and does not point to any FCC or otherwise relevant
rule that establishes an official FCC license is necessary.  Accordingly, the Court will admit this fact.

communications facility.  (Doc. 27, at ¶ 10; Doc. 31, at ¶ 10).  In support of its application, Verizon submitted: (1) an Application (Doc. 27-1); (2) the Zoning Plan (Doc. 27-2); (3) Generator Specifications (Doc. 27-3); (4) Structural Letter (Doc. 27-4); (5) FCC License (Doc. 27-5); (6) Radio Frequency Design Report (Doc. 27-6); (7) Interference Analysis (Doc. 27-7); (8) Electromagnetic Emissions Analysis (Doc. 27-8); (9) FAA Determination (Doc. 27-9); (10) Pennsylvania Bureau of Aviation Screening (Doc. 27-10); (11) Memorandum of Lease (Doc. 27-11); (12) National Operations Center Contact (Doc. 27-12); (13) Emergency Service Use Confirmation (Doc. 27-13); (14) Agreement to Provide Removal Bond (Doc. 27-14); (15) Engineering Comment Letter (Doc. 27-15); (16) Revised Plans (Doc. 27-16); (17) Letter from Rettew Associates (Doc. 27-17); (18) Pre-Hearing Statement (Doc. 27-18); (19) Existing In-Building Coverage Map (Doc. 27-19); (20) Proposed In-Building Coverage Map (Doc. 27-20).  (Doc. 27, at ¶ 12; Doc. 31, at ¶ 12).

The Board held a hearing on April 26, 2017, and May 31, 2017, regarding Verizon's request.  (Doc. 27, at ¶ 11; Doc. 31, at ¶ 11).  At the hearing, Verizon presented the testimony of three witnesses, Eric Brinser (civil engineer), Andrew Petersohn (independent radio-frequency expert), and Sue Manchel (site acquisition consultant).  (Doc. 27, at ¶ 13; Doc. 31, at ¶ 13).  Additionally, two witnesses testified in opposition to Verizon's application at the hearing – Robert Lovenheim (a Township Supervisor and commercial pilot) and Becky Ozgun (a resident of nearby Lake Valhalla and Vice President of the Lake Valhalla Home Association) – and one witness submitted a letter which was read at the hearing –

Jeff Root (who operates a skydiving operation at the Stroudsburg-Pocono Airport). (*See* Doc. 27-23, at 15, ¶ 45). The testimony of the objectors "principally concerned the proximity of the proposed facility to the Stroudsburg Pocono Airport." (Doc. 27, at ¶¶ 29-30; Doc. 31, at ¶¶ 29-30).

On June 21, 2017, the Board denied Verizon's application. (Doc. 27, at ¶ 15; Doc. 31, at ¶ 15). On July 25, 2017, the Board issued a written decision (Doc. 27-23) denying Verizon's application. (Doc. 27, at ¶ 16; Doc. 31, at ¶ 16; *see also* Doc. 27-23, at 25). The Court reviews the written decision (Doc. 27-23) below.

In its decision, the Board made 51 findings of fact. Among the findings of fact, the Board found that "[t]he property in question is owned by RR2 Airport Road, L.L.C. of East Stroudsburg, Monroe County, PA 18301." (Doc. 27-23, at 7, at ¶ 3). Because the property is located in the Township's M-1 Industrial District, a communications tower "is allowed as a conditional use." (*Id.* at ¶ 4).

Verizon's "proposed structure is a wireless communications tower that is ninety-five feet tall with a five foot lightning rod at the top for a total of one hundred feet." (*Id.* at ¶ 5). "The cell tower is in very close proximity to the Stroudsburg – Pocono Airport (which means there is no airport tower directing air traffic)." (*Id.* at ¶ 6). "The existing property is already developed with several buildings located thereon including a large parking area and the balance of the property is either lawn or wooded." (*Id.* at 8, ¶ 8). The proposed tower is to contain approximately twelve antennae, each of which is about a foot deep and no more

than eight feet in length.  (*Id.* at ¶ 9).  Further, "[t]he cell tower pole . . . will be a monopole in

a 50′ by 50′ compound with a 75′ by 75′ leased area with an equipment shelter, screening

on the outside and a stone access drive leading to the compound." (Doc. 27-23, at 8, ¶ 10).

Verizon is also proposing obstruction lighting and a steel monopole with a galvanized non-

reflective finish designed to accommodate two additional carriers.  (*Id.* at ¶ 11).  "The

equipment platform will be a metal platform raised off the ground with a canopy over it and

would stand approximately 12′ 7″."  (*Id.* at ¶ 12).  "The equipment platform will house

electrical equipment necessary for the cell tower. The overall facility will not be manned or

occupied so no sewer service or water service is being provided to the facility."  (*Id.* at ¶ 13).

A generator will also be operated bimonthly or in the case of an emergency, and "the

Applicant is of the position that this generator will not create any noise in the area."  (*Id.* at ¶

14).  To prevent unauthorized access to the facility, an eight-foot high chain link fence with

one foot of barbed wire will surround the facility.  (*Id.* at ¶ 15).   At the base of the complex,

Verizon will also plant evergreens which will reach approximately eight to twelve feet in

height, and Verizon would maintain the landscaping screen. (Doc. 27-23, at 9, ¶ 16).

Verizon will include "signage . . . that will provide a typical warning," two off-street parking

spaces, and lighting for inside the compound."  (*Id.* at ¶¶ 17-19).  "[T]raffic to and from the

site will be minimal with a technician or employee visiting the site every month or every

other month."  (*Id.* at ¶ 20).

The Board then turns to reviewing the testimony given at the hearing. In reviewing Eric Brisner's testimony, the Board noted that "[w]hile Mr. Brisner testified that the tower will be built to comply with all applicable industry standards, he did not present any testimony regarding the criteria that shall be taken into consideration by the Township Board of Supervisors (when acting upon a condition use application) as found in ordinance Section 705 C(1)-(5)." (Doc. 27-23, at 10, ¶ 21). The Board further found that "Mr. Brisner confirmed that the cell tower's 100' setback is not sufficient and does overlap onto an existing manufacturing building on the northwest corner of the proposed tower setback radius" and that "Mr. Brisner was not completely familiar with the Zoning Plan as he could not respond to a question regarding a symbol on the Zoning Plan." (Doc. 27-23, at 10, ¶¶ 22-23).

With respect to Mr. Petersohn's testimony, the Board stated that "[he] testified that the site in question was chosen by Verizon Wireless in order to provide more reliable service in the Township as there is spotty coverage due to aggressive terrain. However, the Board of Supervisors does not find that testimony credible or persuasive as township residents (who attended the hearing) disagreed with this statement." (*Id.* at 11, ¶¶ 25). Mr. Petersohn also "testified as to the other Verizon facilities currently serving the area; and, he prepared a radiofrequency design analysis demonstrating the need for another Verizon cell tower facility within the Township." (*Id.* at ¶ 26). Further, "Mr. Petersohn testified that while the proposed cell tower would be a significant improvement, it would not service the entire Township given the Township terrain and the height of the proposed tower." (*Id.* at ¶ 27).

Additionally, the Board found that the FAA determination and PA Bureau of Aviation, to which Petersohn pointed in support of his testimony that the cell tower was not a hazard to air navigation, did not address the concerns with respect to skydiving activities at the nearby airport. (Doc. 27-23, at 11-12, ¶¶ 29-30). The Board noted that the FAA and the PA Bureau of Aviation letters "refer to a 130' high cell tower and not the 100' cell tower in question. While the Applicant's argument is that if a 130' cell tower provides no obstruction, it follows that a 100' high cell tower would also not be an obstruction, there is still no evidence or testimony regarding the consideration, protection or safety of the skydivers at the tower height of 100'." (*Id.* at ¶ 31). The Board then stated that "Mr. Petersohn . . . did not present any testimony regarding the criteria that shall be taken into consideration . . . as found in Ordinance Section 705 C(1)-(5)." (Doc. 27-23, at 12, ¶ 32).

Next, the Board reviewed Edward Baker, a citizen objector's testimony. The Board noted, "[w]hile Mr. Baker was concerned that the tower be properly lighted, he also expressed concerns that the airport was uncontrolled and that there could be interference with the base repeater that would interfere with MedEvac communications." (*Id.* at 12-13, ¶ 33).

The Board then reviewed Sue Manchel's testimony. The Board found that Manchel testified that "Verizon wireless has already executed a lease agreement with the property owner," and that "there was another acceptable cell tower site . . . but . . . Verizon could not move forward as a result of tax issues." (Doc. 27-23, at 13, ¶¶ 35-36). Additionally,

"Verizon will make space available on the tower for other wireless carriers as well as emergency service providers" and "would provide to the Township a tower removal bond." (*Id.* at ¶ 37-38). The Board also specifically noted that "Ms. Manchel . . . did not present any testimony regarding the criteria that shall be taken into consideration by the Township Board of Supervisors as found in Ordinance Section 705 C(1)-(5)." (Doc. 27-23, at 13-14, ¶ 39).

The Board then reviewed Robert Lovenheim's testimony. Lovenheim referenced a letter written by Jeff Root, who operates a skydiving operation located at the Stroudsburg-Pocono Airport, which was introduced into evidence. (Doc. 27-23, at 14, ¶ 40). The letter "clearly stated the tower should not be approved as it represented a safety hazard to skydiving customers, aircraft and others. Mr. Root stated that the FAA's blanket formula did not accurately account for other variables such as a busy helicopter airport and its skydiving operations." (Doc. 27-23, at 13-14, ¶ 43). Further, "based upon an informal survey on all points of the compass around the airport, Mr. Lovenheim testified that he has found no complaints of Verizon service from its customers." (Doc. 27-23, at 15, ¶ 47).

Additionally, "Becky Ozgun offered testimony as a resident of nearby Lake Valhalla and as Vice President of the Lake Valhalla Home Association. She also believed the cell tower is dangerous in the area as it would create a safety issue where she has seen parachuters fall in trees and gliders fall into Lake Valhalla." (Doc. 27-23, at 15, ¶ 45). The Board noted that "Mr. Steve Somers, as owner of the property in question, testified that he had petitioned Verizon Wireless to improve the wireless service in the area. However, Ms.

Ozgun testified that she and other individuals who live in the Township have excellent service." (*Id.* at ¶ 46).

The Board found that the "Township Planning Commission did review the conditional use application and did recommend that the application be granted with the following conditions i.e. there be compliance with the Township Engineer [Jon Tresslar] review letter of April 3, 2017 and that there be a safety engineer report concerning the safety of the tower near the airport confirming that there would be no interference with planes, helicopters, parachutes, and then like." (Doc. 27-23, at 16, ¶ 48). The Board also noted that "[w]hile the Applicant's Engineer did provide a Response Letter to the Tresslar Correspondence, the Applicant did not present any follow-up response from Mr. Tresslar that Tresslar had reviewed the revised Zoning Plan to support the position that the Applicant had, in fact, complied with the various township ordinance provisions as outlined in his letter.  Indeed, several of the Rettew responsive comments were that expert testimony would satisfy the requirements or that items outlined in Ordinance section 705.C [*sic*] will be addressed at the Conditional Use Hearing; and, this did not occur." (Doc. 27-23, at 16, ¶ 49).

Finally, the Board found "that the Applicant has not complied with all ordinance requirements; and, if there has been ordinance compliance, there has not been sufficient evidence presented to protect the health, safety and general welfare of the present or future residents of Smithfield Township including the individuals who utilize the Stroudsburg –

Pocono Airport such as the fixed wing pilots, rotary wing pilots and the parachuters (mostly novice jumpers coming from urban areas). (Doc. 27-23, at 16, ¶ 50).

After making its findings of fact, the Board concluded that the requirements of the Ordinance were not met for the following reasons:

> While the Applicant's presentation covered many areas, the testimony presented by the Applicant does not reflect the Applicant's ability (or intent) to meet all ordinance requirements and standards.
>
> There were areas where the Applicant's testimony was incomplete. For example and while under Section 705(B) there was much testimony regarding the design factors to be considered, the setback factor was not fully considered. There was testimony that the tower could collapse and hit one of the manufacturing buildings on the adjoining parcel. Further, one of the Applicant's experts…no matter how experienced…was not able to identify a certain mapping symbol when questioned by the Township Engineer. Still further, the "no hazard" or "no obstruction" letters that were received from the FAA and PA Bureau of Aviation dealt with a 130'…and not a 100'…tower.
>
> Under Section 705(C), there was no testimony as to whether the project has a detrimental or positive impact on adjacent properties or whether the use would have a negative impact on property values. While the approval of the use could perhaps be conditioned in such a manner as to eliminate or substantially reduce the detrimental impacts of the tower (such as the installation of lighting), having the top of the tower jutting out just over the tree line is creating an obstacle that could easily be overlooked, especially by novice pilots or parachuters, and that danger cannot be addressed by a simple condition attached to the use.
>
> There was also no testimony that the use will have a positive or negative effect on the environment, job creation "…or any other factions which reasonably relate to the health, safety and general welfare of the present or future residents of…Smithfield Township."
>
> There was also no testimony as to whether the use will be developed and improved in a way which is consistent with the Ordinance or the Township's Comprehensive Plan.
>
> It may be argued that the Township is being too strict in interpreting its Ordinance, it would have been a simple matter for the Applicant to present a Community Planner to testify as to these "missing" Section 705(c) factors.

Further and respectfully, it is not the responsibility of the Township to tell an Applicant how to present its case.

Still further, if you review Applicant's Exhibit No.9-the FAA Determination of No Hazard-you will see that such determination "…does not relieve the sponsor of compliance responsibilities relating to any law, ordinance or regulation of … [an] [*sic*] local government body". Therefore, the Applicant must still comply with township ordinances so that having a "no hazard' letter in its file is not a controlling factor but is only one factor of many to consider.

The use of an airport-especially an uncontrolled one-is fraught with many potential problems with take-offs, landings, weather, terrain, novice pilots and novice parachuters. This is precisely why the Township has adopted an Airport Ordinance in addition to customary zoning ordinance. There is no reason to compound those existing problems with another one problem, especially since there exists another viable cell tower site within the Township but the issues of economics did not make that location acceptable to the Applicant. The Township respectfully suggests that the Applicant work out these issues with the other site issue rather than create safety issues with the present site.

Moreover, the Applicant has not presented evidence that the cell tower site conforms to all zoning requirements that would normally apply if each building were on a separate lot. In Ordinance Section 502 [Two (2) or More Buildings on a Lot] two (2) or more principal buildings located on a parcel in single ownership shall conform to all of the requirements of the [Ordinance] which would normally apply to each building if it were on a separate lot. Under the ordinance, there is no question that the cell tower complex is a "building" and is a second principal use to the industrial buildings located on the lot. There was no testimony to confirm compliance with Ordinance Section 502.

Finally and assuming <u>arguendo</u> that the Applicant did meet all Ordinance requirements, the Board has determined that the Objectors have presented evidence that the proposed use will adversely affect the public safety in a way not normally expected i.e. while perhaps not of a major concern to the general public, the tower in close proximity to an airport will adversely affect pilots and parachuters.

(Doc. 27-23, at 20-23).

Finally, the Board listed 10 "Conclusions of Law." Among its conclusions of law, the

Board decided that "[t]he Applicant has presented insufficient evidence to establish

ordinance compliance for a conditional use under the Ordinance including evidence concerning a setback, detrimental or positive impact on adjacent properties, positive or negative impact on environment or other factors which reasonably relate to health, safety and general welfare of the township residents and whether the property could be developed in a character consistent of the Ordinance and the Township Comprehensive Plan." (Doc. 27-23, at 23-24, ¶ 6). "In other words, there has not been compliance of Sections 704(C), 705(B), and 705(C)(1)-(5) of the Ordinance." (*Id.* at ¶ 7). The Board also concluded that "the Applicant has not presented evidence that the tower site conforms to all zoning requirements that would normally apply if each building were on a separate lot." (*Id.* at ¶ 8). Finally, "[i]f there has been ordinance compliance, the Objectors have presented sufficient evidence that the use will adversely affect the public health, safety and welfare." (*Id.* at ¶ 9).

### III. STANDARD OF REVIEW

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must offer specific

facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

> When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

In this case, the parties have filed cross-motions for summary judgment. According to the Third Circuit:

> Cross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.

*Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008). Each movant must show that no genuine issue of material fact exists; if both parties fail to carry their respective burdens, the Court must deny the motions. *See Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1023 (3d Cir. 2008). When reviewing each cross-motion, the Court is still bound to view the evidence in the light most favorable to the non-movant. Fed. R. Civ. P. 56; *United States v. Hall*, 730 F. Supp. 646, 648 (M.D. Pa. 1990).

## IV. ANALYSIS

The parties' cross-motions for summary judgment rest on two provisions of the TCA: one procedural and the other substantive. "The TCA expressly preserves the traditional authority enjoyed by state and local government to regulate land use and zoning, but places several substantive and procedural limits upon that authority when it is exercised in relation to personal wireless service facilities . . . ." *APT Pittsburgh Ltd. P'ship v. Penn Twp. Butler*

*Cty. of Pa.*, 196 F.3d 469, 473 (3d Cir. 1999) (citing 47 U.S.C. § 332(c)(7)). Procedurally, the parties disagree over whether the Board's decision was supported by substantial evidence as required by 47 U.S.C. § 332(c)(7)(B)(iii). (Doc. 28, at 10; Doc. 25, at 4-5). Substantively, the parties take issue with whether the Board's denial had the effect of prohibiting wireless service in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II). (Doc. 28, at 28; Doc. 25, at 5). Additionally, Verizon presents a separate claim as an appeal of the Zoning Board's decision, claiming the Court's supplemental jurisdiction. Because both the TCA substantial evidence claim and the state law zoning appeal claim hinge on the same "substantial evidence" standard, the Court will address them first. *See Horvath Towers III, LLC v. Zoning Hearing Bd. of Butler Twp.*, 247 F. Supp. 3d 520, 535 (M.D. Pa. 2017). The Court will then address Verizon's prohibition of service claim.

1. <u>Substantial Evidence Claims</u>

   A. TCA Substantial Evidence Claim

      Verizon contends that the Board's denial of its application violates Section 332(c)(7)(B)(iii) of the TCA because it is not supported by substantial evidence. Verizon sets forth several grounds in support of its argument: (1) that the Board misapplied the standards and burdens of proof; (2) that the decision is based on requirements not contained in the Ordinance; (3) that the Board's conclusion that Verizon failed to present evidence that the site conformed to all zoning requirements if each building were located on a separate lot is not supported by substantial evidence; and (4) that neither the objectors

nor the Board established to a high degree of probability that the proposed use would substantially affect the community's health, safety, and welfare. (Doc. 28, at 10-27). On the other hand, the Board contends that Verizon did not meet all of the Ordinance requirements. (Doc. 25, at 7-16). The Board also contends, in the alternative, that even if Verizon met the Ordinance requirements, "there has been substantial evidence presented by the Objector (to a high degree of probability) that the use is detrimental to the health, safety and general welfare of the present or future residents of Smithfield Township including the individuals who utilize the Stroudsburg-Pocono Airport such as the fixed wing pilots, rotary wing pilots, and the parachuters (mostly novice jumpers coming from urban areas)." (*Id.* at 16.). On those grounds, the Board contends that its decision was supported by substantial evidence. (*Id.*). In reviewing the written decision and record, the Court finds that the Board's decision was not supported by substantial evidence for the reasons discussed herein.

Section 332(c)(7)(B)(iii) of the TCA states, "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). "The substantial evidence test applies to findings made by a zoning hearing board under the locality's own zoning requirements." *Ogden Fire Co. No. 1 v. Upper Chichester Twp.*, 504 F.3d 370, 379 (3d Cir. 2007). The Third Circuit has opined on the "substantial evidence" standard:

> Substantial evidence is a legal term of art. It "does not mean a large or considerable amount of evidence, 'but rather such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S. Ct. 2541, 101 L. Ed. 2d 490 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)). A court reviewing under the substantial evidence standard "is not to weigh the evidence contained in that record or substitute its own conclusions for those of the fact finder," but rather is to "determine whether there is substantial evidence in the record as a whole to support the challenged decision." *AT&T Wireless v. Zoning Bd. of Adjustment of the Borough of Ho–Ho–Kus*, 197 F. 3d 64, 71 (3d Cir.1999).

*Omnipoint Commc'ns Enters., L.P. v. Zoning Hearing Bd. of Easttown Twp.*, 248 F.3d 101, 106 (3d Cir. 2001). Further,

> [t]he Court must "overturn the board's decision . . . if it cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the [b]oard's view." *SBA Commc'ns, Inc.*, 112 F. Supp. 2d at 237 (quoting *BellSouth Mobility Inc. v. Gwinnett Cty.*, 944 F. Supp. 923, 928 (N.D. Ga. 1996)). If the Court finds that <u>even one reason</u> given for the denial is supported by substantial evidence, the decision of the local zoning body cannot be disturbed. *See, e.g., id.* at 237.

*N.Y. SMSA Ltd. P'ship v. Town of Oyster Bay Zoning Bd. of Appeals*, 2010 WL 3937277, at *4 (E.D.N.Y. September 30, 2010) (emphasis added).

While the standard is deferential to the zoning board, "it is not a rubber stamp" and a zoning board "is not free to prescribe what inferences from the evidence it will accept and reject, but must draw all those inferences that the evidence fairly demands." *Glob. Tower, LLC. v. Hamilton Twp.*, 897 F. Supp. 2d 237, 251 (M.D. Pa. 2012) (quoting *T-Mobile Cent. v. Unified Gov't of Wyandotte Cnty.*, 546 F.3d 1299, 1307 (10th Cir. 2008)). "[I]f the record as a whole contains conflicting evidence, the fact-finder must adequately explain its reasons

for rejecting or discrediting competent evidence." *Glob. Tower, LLC.*, 897 F. Supp. 2d at

251 (quoting *Cellular Tel. Co. v. Zoning Bd. of Adjustment of the Borough of Ho-Ho-Kus*,

197 F.3d 64, 71 (3d Cir. 1999)).

i.   *The Zoning Ordinance and Burdens of Proof*

Because the basic requirements and burdens of proof are disputed by the parties,

and resolution of those disputes is necessary to determining whether the Board's decision is

supported by substantial evidence, the Court first addresses the parties' contentions with

respect to the requirements and burdens of proof under the Ordinance.  Verizon argues that

the Board misapplied the standards and burdens of proof under the Ordinance.  (Doc. 28, at

11).  In so arguing, Verizon focuses on the conclusion in the Board's written decision that its

application does not meet the requirements under Ordinance Section 705(C).  (*Id.* at 14).

Verizon contends that the criteria under Ordinance Section 705(C) constitute general

requirements, on which it did not bear the burden of proof.  (*Id.*).  In response, the Board

contends that the Ordinance "clearly requires" Verizon to prove the requirements under

Ordinance Section 705(C).  (Doc. 32, at 2).  The Court reviewed the Ordinance and finds

that the criteria under Ordinance Section 705(C) constitute general requirements, on which

Verizon did not bear the duty to present evidence or the burden of proof.

"In the context of Section 332(c)(7)(B)(iii), the decision process itself is governed by

state and local zoning laws. The reviewing court's task is to determine whether the decision,

*as guided by local law*, is supported by substantial evidence." *Cellular Tel. Co.*, 197 F.3d at

72 (emphasis added); *see also Glob. Tower, LLC.*, 897 F. Supp. 2d at 252-253; *Horvath*

*Towers III, LLC*, 247 F. Supp. 3d at 529; *Ogden Fire Co. No. 1 v. Upper Chichester Twp.*,

Civ. Action No. 05-1031, 2006 WL 851391, at *18 (E.D. Pa. March 30, 2006), *aff'd*, 504 F.3d

370 (3d Cir. 2007); *cf. Nextel Commc'ns of the Mid-Atlantic, Inc.*, Civ. No. 3:14-cv-2409,

2016 WL 1271385, at *6 (M.D. Pa. March 31, 2016).   For example, the court in *Global*

*Tower, LLC.* applied Pennsylvania state law to determine whether the applicant and

objector met their respective burdens to determine whether the zoning board's decision was

supported by substantial evidence under the TCA:

> Here, I am convinced that the Board did not apply the proper burden of proof
> in making its decision to deny Global's Application. While a zoning ordinance
> may shift the burden of proof to the applicant to demonstrate that the special
> use would not harm the health or welfare of the community, Hamilton's
> Ordinance does not contain such a burden shifting provision. The Board's
> misapplication of the parties' burden is apparent in the Board's
> written decision, which states: "the Ordinance specifically requires proof that
> the Special Use will *not* cause substantial injury to the value of other property
> where it is located"; "*nor did the Applicant prove* that the Applicant's proposed
> cell tower will conserve property values as required by Section 802.3"; and "the
> Applicant has *not persuaded* the Board that the Applicant sustained *its*
> *burden* of proof of all elements . . ." (*Zoning Hearing Board Decision*, 60-64
> (emphasis added).) Based on the foregoing excerpts from the Board's written
> opinion, it is clear that the Board incorrectly required Global to prove that
> property values would not be impaired, instead of requiring the objectors
> demonstrate by a high probability that the Tower would pose a negative impact
> on the safety and health of the community.
>
> By misconstruing the parties' burdens, the Board did not review the evidence
> to determine whether the objectors made an adequate showing to satisfy their
> burden as to the impact on property values. The Board, improperly, reviewed

the evidence to highlight the deficiencies in Global's case as opposed to examining the sufficiency of the evidence offered by the objectors.

*Glob. Tower, LLC .*, 897 F. Supp. at 252-53 (emphasis in original).  Thus, this Court considers Pennsylvania state law in determining the proper burdens of proof under the Ordinance to assess the merits of the TCA substantial evidence claim.

Under Pennsylvania state law, "[a] special exception is neither special nor an exception, but a use expressly contemplated that evidences a legislative decision that the particular type of use is consistent with the zoning plan and presumptively consistent with the health, safety, and welfare of the community."  *Allegheny Tower Assocs., LLC v. City of Scranton Zoning Hearing Bd.*, 152 A.3d 1118, 1123 (Pa. Commw. Ct. 2017).[3]  Thus, "[a]n explicit special exception in an ordinance has already been designated to be appropriate by the particular zoning district and is 'presumptively consistent with the public health, safety, and welfare' of the residents in that district."  *Horvath Towers III, LLC*, 247 F. Supp. 3d at 535 (citing *JoJo Oil Co., Inc. v. Dingman Twp. Zoning Hearing Bd.*, 77 A.3d 679, 686 (Pa. Commw. Ct. 2013)).  In this case, there is a conditional use provision in the Ordinance allowing for the grant of an application for the erection of a cell tower.

_____

[3] The Court notes that the application at issue involved a "conditional use."  As the Pennsylvania Commonwealth Court explained, "[c]onditional uses and special exceptions are both uses conditionally permitted by zoning ordinances.  They differ only in the fact that conditional uses fall under the jurisdiction of a municipal governing body, while special exceptions are decided by zoning hearing boards. 'The law regarding conditional uses and special exceptions is virtually identical.'"  *Marquise Inv., Inc. v. City of Pittsburgh*, 11 A.3d 607, 610 n.4 (Pa. Commw. Ct. 2010) (quoting *Sheetz, Inc. v. Phoenixville Borough Council*, 804 A.2d 113, 115 n.5 (Pa. Commw. Ct. 2002)).  Therefore, while some of the law cited herein may refer to a "special exception" use, that law is also applicable to the issue involving a "conditional use."

"An applicant for a special exception has both the duty of presenting evidence and the burden of persuading the Zoning Hearing Board that its proposed use satisfies the zoning ordinance's objective requirements for the grant of a special exception." *Allegheny Tower Assocs., LLC*, 152 A.3d at 1123. The burden then normally shifts to the objectors to present evidence and persuade that the proposed use will have a generally detrimental effect on health, safety and welfare." *Id.* "The evidence presented by the objectors must show a high probability that the use will generate adverse impacts not normally generated by this type of use, and that these impacts will pose a substantial threat to the health and safety of the community." *Id.* "Mere speculation as to possible harm is insufficient." *Broussard v. Zoning Bd. of Adjustment*, 831 A.2d 764, 772 (Pa. Commw. Ct. 2003) (citing *H.E. Rohrer, Inc. v. Zoning Hearing Bd. of Jackson Twp.*, 808 A.2d 1014, 1018 (Pa. Commw. 2002)).

The Pennsylvania Commonwealth Court explained this framework in *Bray*:

[A]n applicant, by showing compliance with the specific requirements of the ordinance, identifies the proposal as one which the local legislation expressly designates to be appropriate in the district and therefore presumptively consistent with the promotion of health, safety and general welfare; hence it is logical that . . . the Pennsylvania decisions have placed on the objectors the 'burden' of showing the proposal to be detrimental to public health, safety and welfare.

*Bray v. Zoning Bd. of Adjustment*, 410 A.2d 909, 911 (Pa. Commw. Ct. 1980) (internal citations omitted).

Courts have defined the objective or specific requirements as "reasonable definite conditions that are detailed in the ordinance." *JoJo Oil Co. v. Dingman Twp. Zoning Hearing Bd.*, 77 A.3d 679, 687-88 (Pa. Commw. Ct. 2013); *In re Thompson*, 896 A.2d 659 (Pa. Commw. Ct. 2006). For example, in *Williams Holding Group, LLC v. Bd. of Supervisors of West Hanover Twp.*, the court opined that "a clear cut example of a proper, objective requirement is a buffer requirement . . . where the conditional use provisions of the ordinance required that storm water basis be located at least fifty feet from the defined edge of a watercourse." 101 A.3d 1202, 1213 (Pa. Commw. Ct. 2014).

These specific or objective requirements stand in contrast to "general, non-specific or non-objective requirements, such as health and safety." *JoJo Oil Co.*, 77 A.3d at 688. "When municipalities have put general, non-specific or non-objective requirements in the ordinance with respect to special exceptions, [Pennsylvania State Court] decisions have usually not seen such general provisions as part of the threshold persuasion burden and presentation duty of the applicant." *Id.* Put differently, "if a requirement is interpreted as one upon which the burden is placed on an applicant, but the requirement is nonobjective or too vague to afford the applicant knowledge of the means by which to comply, the requirement is either one that is not enforceable, or if it relates to public detriment, the burden shifts to an objector, who must demonstrate that the applicant's proposed use would constitute such a detriment." *Williams Holding Group, LLC*, 101 A.3d at 1213. Accordingly, "a key element in evaluating conditional use decisions by a governing body is whether

requirements contained in the zoning ordinance are specific and objective or vague and subjective." *Id.*

The Pennsylvania Commonwealth Court explained,

[i]t is in the nature of a special exception to require that the applicant meet reasonably definite conditions, and it would be manifestly unfair to require [the applicant] to prove conformity with a policy statement, the precise meaning of which is supposed to be reflected in *specific* requirements . . . . Any other view would enable the Board to assume the legislative role.

*In re Appeal of George Baker*, 339 A.2d 131, 135 (Pa. Commw. Ct. 1975).

Thus, "where . . . the terms of an ordinance have not expressly placed the burden of persuasion regarding general detrimental effects to the health, safety and welfare on an applicant, the applicant has the burden of persuasion only as to specific requirements, while objectors have the burden as to all general detrimental effects." *Allegheny Tower Assocs., LLC*, 152 A.3d at 1124 (quoting *Marquise Inv., Inc.*, 11 A.3d at 607). "[A]n applicant for a special exception need only prove compliance with the specific, objective special exception criteria set forth in the zoning ordinance." *Id.*

In order to ascertain the merits of the parties' arguments, the Court first reviews the Ordinance requirements at issue. In its decision (Doc. 27-23, at 18-19), and at the outset of the hearing (Doc. 27-21, at 19-2), the Board stated that the requirements for the application are set forth in Ordinance Sections 705(B) and 705(C). In their filings, the parties do not dispute that Ordinance Section 705(B) presents specific requirements, which the Applicant bears the duty of presenting evidence and the burden of persuasion. Nonetheless, the

parties dispute whether Ordinance Section 705(C) constitutes general or specific

requirements and whether the applicant or the objectors bear the duty of presenting

evidence or the burden of persuading the Board regarding the criteria. (*See* Doc. 28, at 14;

Doc. 32, at 2).

Ordinance Section 705(C) provides:

The Board of Supervisors, in acting upon the site development plan and conditional use permit application, shall take into consideration not only the criteria contained above, but also the following:

(1) Whether the proposed use will have a detrimental or positive impact on adjacent properties. A new use should not produce a significant negative impact on the property values of adjacent properties nor should it create potential nuisance impacts related to noise, odors, vibrations or glare.

(2) If the proposed use is one judged to present detrimental impacts, whether an approval could be conditioned in such a manner as to eliminate or substantially reduce those impacts.

(3) Whether the use will have a positive or negative effect on the environment, job creation, the economy, housing availability, open space preservation or any other factors which reasonably relate to the health, safety and general welfare of present or future residents of the Smithfield Township.

(4) Whether the granting of an approval will cause an economic burden on community facilities or services including, but not limited to, highways, sewage treatment facilities, water supplies and firefighting capabilities. The applicant shall be responsible for providing such improvements or additional services as may be required to adequately serve the proposed use and any approval shall be so conditioned. The Township shall be authorized, subject to the limitations of the Pennsylvania Municipalities Planning Code, to request fees in support of such services where they cannot be directly provided by the applicant.

(5) Whether the site plan indicates the property will be developed and improved in a way which is consistent with that character this Chapter and the Township's Comprehensive Plan are intended to produce or protect, including

> appropriate landscaping and attention to aesthetics and natural feature
> preservation.

Ordinance Section 705(C).

In reviewing the relevant provisions of the Ordinance, the Court agrees with Verizon that the criteria set forth in Ordinance Section 705(C) constitute general requirements as to which it does not bear the burden of proof. The Court first addresses the Board's contention that the Ordinance "clearly requires the Applicant to meet its burden of proof on the Section 705(C) factors." (Doc. 25, at 7, 9). In so arguing, the Board directs the Court to the Ordinance's language immediately preceding the five general requirements which states, the Board "*shall* take into consideration." (*Id.* at 7) (emphasis added). The Court disagrees.

While the Ordinance requires that the Board "shall take into consideration" the factors in Ordinance Section 705(C), the Court does not find that this language "expressly placed the burden of persuasion regarding general detrimental effects to the health, safety and welfare on an applicant." *Allegheny Tower Assocs., LLC*, 152 A.3d at 1124. Furthermore, numerous courts have assessed local zoning ordinances containing affirmative language (i.e., using affirmative words such as shall, must, will) that preceded the Ordinance's general requirements and did not reach the conclusion that such language shifted the burden with respect to those general effects to the applicant. *See, e.g., id.* (imposing burden on objectors with respect to health, safety, and general welfare criteria, where ordinance contained the following language preceding general requirements, "[t]he Zoning Board shall approve any proposed [special exception] if [it] finds adequate evidence

that the proposed use will . . . ."); *B.A.C., Inc.*, 492 A.2d at 482 (imposing burden on objectors where ordinance stated that "the Board shall consider 'the following standards and criteria'" and then listed seven criteria which it determined to be general); *Marquise Inv., Inc.*, 11 A.3d at 612 (imposing burden on objectors where ordinance provided that "City Council shall approve Conditional Uses only if . . . the following general criteria are met"). Following the weight of authority, this Court similarly does not find that the plain language under Ordinance Section 705(C) "expressly" places the burden of persuasion with respect to those criteria on the applicant. *Allegheny Tower Assocs., LLC*, 152 A.3d at 1124.

Next, the Court addresses whether the Ordinance Section 705(C) imposes general or specific requirements. In reviewing the Ordinance, the Court agrees with Verizon that the Ordinance imposes general requirements which Verizon did not bear the burden of proof.

Ordinance Section 705(C) does not impose any specific objective requirements on the applicant, such as the requirement noted above in *Williams Holding Group, LLC.* Rather, it imposes non-specific and non-objective requirements such as, "a detrimental or positive impact on adjacent properties;" "a positive or negative impact on the environment, job creation, the economy, housing availability, open space preservation or any other factors which reasonably relate to health, safety, and general welfare;" "whether the granting of approval will cause an economic burden on community facilities or services;" and "whether the site plan indicates the property will be developed and improved in a way

which is consistent with the character this Chapter and the Township's Comprehensive Plan are intended to produce or protect." Ordinance Sections 705(C)(1)-(5).

Other courts have determined that provisions of local ordinances similar to each of the provisions in Ordinance Section 705(C) constituted general requirements. Taking each requirement under Ordinance Section 705(C) separately, Ordinance Sections 705(C)(1) and (2) are related to "[w]hether the proposed use will have a detrimental impact on adjacent properties." In *Marquise Invs., Inc. v. City of Pittsburgh*, the court analyzed an ordinance with subsections which related to potential health and safety impacts of noise, emissions, or vibrations, and the impact a proposed use may have on future and potential development of neighboring parcels. 11 A.3d 607, at 615-16. There, the court determined that the subsections constituted general requirements, where the objectors and the City held the duty of presenting evidence and the burden of persuasion. Similarly, in *Alleghany Tower Assocs., LLC*, the court analyzed the following ordinance provision:

> The [Zoning Hearing Board] shall approve any proposed [special exception] if [it] find[s] adequate evidence that the proposed use will . . .
>
> 4. Comply with all of the following standards:
>      . . .
>      e. Neighborhood. Will not significantly negatively affect the desirable character of an existing residential neighbor.

152 A.3d at 1124. In that case, the court concluded that effects on the character of the neighborhood constitute effects related to health, safety, and welfare of the neighborhood. *Id.* Further, "because [the provision] relates to general effects to the health, safety and

welfare of the neighborhood and because the zoning ordinance does not clearly place the burden regarding this criterion on a special exception application, the objectors bore both the initial evidence presentation and duty and the persuasion burden." *Id.* at 1125. Ordinance Sections 705(C)(1) and (2) are no different from the provisions analyzed in the above-discussed caselaw. Following the relevant authority, this Court finds that Ordinance Section 705(C)(1) and (2) also relate to a "general" health, safety, and welfare concern and thus constitute general criteria, where the objector bears the duty to present initial evidence and has the burden of persuasion. *See id.*

Section 705(C)(3) refers to a "a positive or negative impact on the environment, job creation, the economy, housing availability, open space preservation or any other factors which reasonably relate to health, safety, and general welfare." In *Bray v. Zoning Board of Adjustment*, the Pennsylvania Commonwealth Court reviewed a similar provision and held that the criterion involving the "detriment to public health, safety, or welfare" was a "general" requirement. 410 A.2d 909 at 913. Similarly, in *B.A.C., Inc. v. Zoning Hearing Bd.*, analyzed the following provision of an ordinance and also determined that the provision constituted a general requirement by following the rationale in *Bray*:

> For "all cases of special exception," . . . the board shall consider "the following standards and criteria, which are express conditions for the grant of any special exception." Seven criteria, of the sort which *Bray* and *Derr* classified as general, follow: (1) that the use will not be detrimental to the public health, safety and welfare; . . . .

*B.A.C., Inc.*, 492 A.2d at 482.

Here, Ordinance Section 705(C)(3) – which involves the health, safety, and general welfare of the neighborhood – is no different from the provisions contemplated in *Bray* or *B.A.C., Inc.* Provisions that contemplate the "health, safety, and general welfare" are considered to be so general and indefinite that they are essentially policy statements, and, as the court in *In re Appeal of George Baker* explained, "it would be manifestly unfair to require [the applicant] to prove conformity with a policy statement, the precise meaning of which is supposed to be reflected in *specific* requirements." 339 A.2d at 135 (finding that criteria relating to health, safety and general welfare is considered general, policy-oriented language that would lend itself to "arbitrary application" if the applicant were required to prove conformity with such criteria). As such, the Court finds that 705(C)(3) also constitutes a "general" requirement, on which the objectors bear the duty to present evidence and the burden of persuasion. *See Allegheny Tower Assocs., LLC*, 152 A.3d at 1123.

Ordinance Section 705(C)(4) requires consideration as to "whether the granting of an approval will cause an economic burden on community facilities or services." The court in *Tower Access Grp., LLC. v. S. Union Twp. Zoning Hearing Bd.*, 192 A.3d 291, 301 (Pa. Commw. Ct. 2018) addressed this type of provision. In that case, the court stated "[t]his section of the Ordinance . . . imposes non-specific and non-objective requirements such as . . . not substantially increasing the burden on any public utilities and facilities." The court in *B.A.C., Inc.* also dealt with an Ordinance that included a provision that the zoning board should consider "that such cumulative effect will not place a significant additional burden

upon public facilities." 492 A.2d at 482. There, the court concluded that such a provision was "of the sort which *Bray* . . . classified as general". *Id.* Ordinance Section 705(C)(4) is virtually identical to the provision considered by the *Tower Access Grp., LLC.* and *B.A.C* courts, both of which concluded that the provisions constituted general requirements. Moreover, like other provisions prescribing general requirements, the provision in Ordinance Section 705(C)(4) is indefinite, broad, and pertains to the health, safety, and general welfare of the neighborhood. For these discussed reasons, it follows that Ordinance Section 705(C)(4) also falls under the category of requirements which the *Bray* Court classified as "general." *See Bray*, 410 A.2d at 913.

Finally, Ordinance Section 705(C)(5) pertains to whether "the site plan indicates the property will be developed and improved in a way which is consistent with that character this Chapter and the Township's Comprehensive Plan are intended to produce or protect." The court in *Cherbel Realty Corp. v. Zoning Hearing Bd.* addressed a similar provision, where the local ordinance attempted to require the Applicant to demonstrate that the special exception would be "in harmony with general purposes and intent" of the zoning ordinance. 285 A.2d 905, 906 (1972). The court in *Cherbel Realty Corp.* explained,

> [t]his language is so vague that the lower court was correct in concluding that the applicant's only burden was to prove that its request for special exception conformed to the requirements of the ordinance and that the opposition to the exception must carry the burden of proving that the proposed use would be contrary to the public interest.

*Id.* Similarly, in *Borden Appeal*, the Pennsylvania Supreme Court held that a provision where "the Board shall 'hear and decide special exceptions to the terms of this ordinance in such cases as herein expressly provided for, in harmony with the general purpose and intent of this ordinance" did not impose any burden of proof on the applicant, and that the objectors retained that burden with respect to detriment to health, safety and general welfare. 369 Pa. 517, 87 A.2d 465, 467 (1952). Following this authority, this Court similarly finds that Ordinance Section 705(C)(5) constitutes a "general requirement." *See Bray*, 410 A.2d at 913.

In sum, the Court concludes that each of the five provisions in Ordinance Section 705(C) constitute "general, non-specific or non-objective requirements, such as health and safety." *JoJo Oil Co.*, 77 A.3d at 688. To that end, the Applicant bears the duty of presenting evidence and the burden of persuading the Zoning Hearing Board that its proposed use satisfies the zoning ordinance's *specific* requirements. As discussed above, those specific requirements do not include the criteria set forth in Ordinance Section 705(C). Once the Applicant has met those specific requirements, "the burden then shifts to the objectors to present evidence and persuade that the proposed use will have a generally detrimental effect on health, safety and welfare." *Id.* Thus, to the extent that the Board's decision to reject Verizon's application rests on the general requirements under Ordinance Section 705(C), the Board's decision must be supported by evidence proffered by the objectors. *See id.*

## ii.    *Review of the Board's Decision*

Keeping the principles discussed in the preceding section in mind, the Court now turns to assess whether the Board's written decision is supported by substantial evidence. The Board argues that Verizon has failed to meet the requirements imposed by the Ordinance, citing, in its decision, to Ordinance Sections 502 704(C), 705(B), and 705(C)(1)-(5). (Doc. 27-23, at 24, ¶¶ 7-8). The Board further asserts that even if Verizon met the specific Ordinance requirements, the Board determined that the objectors presented sufficient evidence to demonstrate the proposed cell tower would be detrimental to the health, safety, and welfare of the town. (Doc. 25, at 9; *see also* Doc. 27-23, at 24, ¶ 9). Therefore, the Board asserts that its decision was supported by substantial evidence. (Doc. 25, at 9). On the other hand, Verizon contends that the Board's denial is "based on requirements not contained in the ordinance," it conformed to all zoning requirements, and that "neither the objectors nor the Board established to a high degree of probability that the proposed use would substantially affect the community's health, safety and welfare." (Doc. 28, at 24). Verizon further asserts that to the extent that the Board denied the application on the basis that Verizon failed to prove the general requirements, the Board's decision errs as a matter of law because the Board improperly placed the burden of proving the general requirements on Verizon. (*Id.* at 14). For these reasons, Verizon contends that the Board's reasons for denial are not supported by substantial evidence. (*Id.*). In reviewing the Board's decision, the Court agrees that it is not supported by substantial evidence.

Before addressing the specific deficiencies of the Board's written decision, the Court notes that, overall, the decision is deficient in reasoning to justify its conclusions, and the decision imparted insufficient information to permit a reviewing court to ascertain the rationale behind its decision. The Board's decision is entirely unclear as to which Ordinance provisions specifically were not met by Verizon and why. The Board did not, at any point in its decision, clearly set forth the conflicting evidence for a particular issue, explain what weight it assigned specific evidence, which evidence it rejected and why, or explain its rationale for the legal conclusions it reached as it was required to do under the substantial evidence standard. *See Arnold v. Sec'y of Health, Educ., and Welfare*, 567 F.2d 258, 259 (4th Cir. 1977) ("Unless the [agency] has analyzed all evidence and has sufficiently explained the weight . . . given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."). Finally, and most problematically, the decision is replete with bald, conclusory assertions, such as "there was no testimony" with respect to a particular issue when, in fact, evidence on the record addressing those specific points existed, including testimony in the hearing record or documentary evidence in the written record, and was seemingly disregarded with no explanation. This method of decision-making does not meet the standard intended by Congress when it enacted 47 U.S.C. § 332(c)(7)(B)(iii), which requires that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place,

construct, or modify personal wireless service facilities *shall be in writing and supported by substantial evidence contained in a written record*" (emphasis added).  As the court in *AT&T Wireless PCS v. City Council of Va. Beach* explained,

> Congress intended that the requirements of § 332(c)(7)(B)(iii) lend themselves to review of zoning authority actions in the same traditional manner, and to the same extent that courts have long been reviewing agency actions.  In *Hobbs v. Clinchfield Coal Co.,* the Fourth Circuit reviewed the decisions of an administrative law judge ("ALJ") under the "substantial evidence" standard. In upholding the decision of the ALJ, the court noted "the ALJ set forth reasons why he attributed greater weight to certain medical opinions, and he specifically addressed each medical opinion which disagreed with his ultimate opinion." Without a written decision setting out the reasons and the rationale for a ruling, a court cannot find those decisions are supported by "substantial evidence," regardless of the contents of the record. Defendant's counsel asserts that Defendant denied the application because of concerns for the compatibility of the antennas with the neighborhood, particularly in regards to aesthetic and visual impacts. Even if this reason had been contained in a written decision or, for that matter, had been expressed as a concern by any member of the City Council, this conclusory statement would be insufficient. "A bald conclusion, unsupported by reasoning or evidence, is generally of no use to a reviewing court."  The danger in accepting conclusory statements without question is that "conclusory… determinations may conceal arbitrariness." . . . At minimum, local authorities must issue rulings in written form, setting out the reasons for the decision and the evidence that led to the decision.

*AT&T Wireless PCS v. City Council of Va. Beach*, 979 F. Supp. 416, 428 (E.D. Va. 1997) (internal citations omitted).

The Board's scant reasoning raises the exact concerns set forth above.  The convergence of the decision's conclusory statements, failure to clearly weigh evidence, and lack of reasoning raises the inference that the Board's decision was arbitrary.  *Id.*  As the Court will demonstrate more specifically below, these analytical deficiencies are present

with respect to each reason proffered by the Board, and thus, the Court concludes that the Board's decision is not supported by substantial evidence.

### a. Specific Requirements

Given the nature of the burden-shifting framework applicable to the instant matter, *see Allegheny Tower Assocs., LLC*, 152 A.3d at 1124, which requires that the applicant meet the specific requirements of the Ordinance, the Court first assesses whether the Board's proffered reasons for denying Verizon's application with respect to the specific requirements are supported by substantial evidence. In closely reading the Board's decision, as far as the Court could glean from the decision, the only specific requirements upon which the Board based its decision to reject Verizon's application were Ordinance Sections 705(B)(12), 502, and 704(C). The Court, in reviewing the record before it, finds that the Board's conclusion that Verizon's application did not meet these specific requirements is not supported by substantial evidence.

With respect to the requirement under Ordinance Section 705(B)(12), the Ordinance states, "[n]ew buildings on a street should conform to the dominant setback line and be aligned parallel to the street so as to create a defined edge to the public space." In its decision, the Board provided the following two explanations in support of its denial on this basis: "while under Ordinance Section 705(B) there was much testimony regarding the design factors to be considered, the setback factor was not fully considered. There was testimony that the tower could collapse and hit one of the manufacturing buildings on the

adjoining parcel . . . ." (Doc. 27-23, at 20). Later in its decision, the Board also concluded,

the "applicant has presented insufficient evidence to establish ordinance compliance for a

conditional use under the Ordinance including evidence concerning a setback." (*Id.* at 23, ¶

6).

In reaching this conclusion, the Board fails to demonstrate that it considered any

evidence on the record involving the setback factor or explain its rationale for rejecting such

evidence. In reviewing the record at the hearing, the Court identified the following testimony

from Mr. Brinser as relevant to Verizon's satisfaction of the setback requirement:

> Q:      . . . . My question is how far is the base of the monopole from the
> road, from Airport Road, and from the – most importantly, from the electric and
> utilities and telephone.
> A:      The requirements that the township has is that there's a setback
> equal to the height of the tower which is in this case, 100 feet. We are showing
> – in the easterly direction, which is towards Airport Road, we are 130 feet from
> the closest property line which would be – without pulling a scale out I would
> say almost double that to Airport Road.

(Doc. 27-21, at 42:10-20). Moreover, the Court notes that Verizon, in its application,

submitted revised "Zoning Building Plans" (Doc. 27-16), which provide a topographic view of

the proposed wire tower and includes a setback as described in the testimony.

In reviewing the Board's decision, the Court finds that the Board failed to set forth a

single reason as to why it attributed no weight to the testimony or the Zoning Building Plans

and ultimately concluded that the setback requirement under Ordinance Section 705(B)(12)

was not met (or fully discussed). As the court in *AT&T Wireless PCS v. City Council of Va.*

*Beach* explained, "[w]ithout a written decision setting out the reasons and the rationale for a

ruling, a court cannot find those decisions are supported by 'substantial evidence,' regardless of the contents of the record." 979 F. Supp. 416, 428 (E.D. Va. 1997). Without a complete analysis of the evidence on the record, the Court cannot find that the Board's conclusion that the setback requirement was not met is supported by substantial evidence.

The Court notes that in discussing the setback requirement, the Board's decision raises the concern that "[t]here was testimony that the tower could collapse and hit one of the manufacturing buildings on the adjoining parcel." (Doc. 27-23, at 20). However, the Board conceded in its response to Verizon's "Concise Statement of Material Facts," "[w]hile the ordinance *may have no specific tower setback requirement (from other buildings/structures)*, this still is a factor that the Board may consider for health, safety and welfare purposes." (Doc. 31, at 3, ¶ 22) (emphasis added). As Verizon correctly states in its brief, "a board abuses its discretion when it denies an application based on standards not contained in a zoning ordinance.' (Doc. 28, at 20 (citing *Blair v. Bd. of Adjustment*, 169 A.2d 49, 50 (1961); *Archbishop O'Hara's Appeal*, 131 A.2d 587, 598 (1957)). Thus, to the extent that the Board admits that this criterion was not required by the Ordinance, a denial on this basis amounts to a legal error and cannot be characterized as supported by substantial evidence.

Additionally, because the Board also concedes that this was a concern related to health, safety and welfare purposes (*see* Doc. 31, ¶ 22), the Board's denial is based on a general requirement, and Verizon did not have the duty of presenting evidence or the

burden of persuasion with respect to this concern.  *See, e.g., Allegheny Tower Assocs., LLC*, 152 A.3d at 1124.  Therefore, the Board erred in placing that burden on Verizon.

The Court further notes that even if the Board properly placed that burden on the objectors, the Board's denial on this basis is still not supported by substantial evidence. Indeed, the Board, again, did not properly consider the evidence that existed on the record. Despite not bearing such burden, Mr. Brisner, Verizon's civil engineer, provided the following explanation to quell the concern that the tower collapsing would adversely impact the health, safety, and wellbeing of the community:

> Q: What does the that indicate as far as issues or hazards or concerns?
>
> A: It does not have any implications as far as the Zoning Ordinance is concerned because it's on the property.  We have a lease, Verizon Wireless has a lease with the property owner, so they've seen and signed off on these plans and they are aware of it.  So, from that stance, there is no implication. The setback is, essentially, to keep the tower from the adjoining properties.
>
> Q: In the event it went over is it going to hit that building?
>
> A: The towers are generally designed – the entire tower is designed to meet the requirements, the code requirements.  They oftentimes overdesign and beef up the lower half so that if there were a potential failure it would bend on itself in half.  So, it would be highly unlikely that if this tower would fail it would touch the building.
>
> Q: Are you telling us that this tower is going to be designed to bend in half or just that's what sometimes is done in towers?
>
> A: It can be done.  If that's something the board would request and require then—
>
> Q: I'm just asking what your testimony is.  Are you saying that the tower will be designed to bend in half to prevent an issue or are you saying it could be designed like that, but we're not designing it like that right now.
>
> A: The tower has not been designed.  At this point, we're at the zoning stage, so we don't have any construction drawings or design drawings for the tower.  If we were to gain approval tonight we would then move forward with the other approvals before having the tower designed.  So, at this time, it's

> not been designed.  I'm indicating, to answer the question, it can be designed
> to bend in half if that's a concern of the township.

(Doc. 27-21, 43:5-44:16).  In contrast, the only evidence upon which the Board relied in

support of its denial regarding its fear that the tower could collapse on another building was

the non-testimonial commentary of the Board Chairman, Brian Barrett. (*See* Doc. 27-23, at

20 ("There was testimony that the tower could collapse and hit one of the manufacturing

buildings on the adjoining parcel." (citing Doc. 27-22, at 117:8-24))). The Board did not

address why or how Barrett's commentary, which it cites to in its decision, satisfied the

objectors' burden "to show a high probability that the use will generate adverse impacts not

normally generated by this type of use, and that these impacts will pose a substantial threat

to the health and safety of the community." *Marquise Inv., Inc.*, 11 A.3d at 607.  As noted

earlier in this Opinion, "[m]ere speculation as to possible harm is insufficient." *Broussard*,

831 A.2d at 772.  The Court finds that Barrett's commentary, without any further evidence or

support, amounts to mere speculation.  The Board's decision provides no indication that it

weighed the conflicting testimony, and it provides no explanation as to why it afforded

weight to Barrett's speculative, unsworn, nontestimonial commentary.

As such, the Court finds that the Board did not appropriately consider the evidence

on either point relating to the setback requirement, i.e., the consideration of the setback and

its fear that the tower could collapse on another building.   For this reason, the Board's

denial on the basis that the "setback requirement was not fully discussed" was not

supported by substantial evidence.  *See APT Pittsburgh Ltd. P'ship*, 196 F.3d at 474-75.

Next, the Court addresses the Board's denial based upon its conclusion that "the Applicant has not presented evidence that the tower site conforms to all zoning requirements that would normally apply if each building were on a separate lot." (Doc. 27-23, at 24). Preliminarily, the Court notes that the Board provides no explanation as to why this requirement is relevant to Verizon's application. Further, the Court cannot discern a basis as to why Ordinance Section 502 applies to Verizon's application particularly because at the outset of Board's decision, the Board notes that the relevant requirements are in Ordinance Sections 705(B) and (C). (*See* Doc. 27-23, at 18-19). Verizon did not dispute that the requirement applies but contends that "[s]ubstantial evidence does not support the Board's conclusion that Verizon failed to present evidence" in satisfaction of this requirement. (Doc. 28, at 21). Assuming, *arguendo*, that Ordinance Section 502 applies, the Court agrees with Verizon.

Ordinance Section 502(5) states, "[t]wo or more principal buildings located on a parcel in single ownership shall conform to all of the requirements of this Chapter which would normally apply to each building if each were on a separate lot. Separation between buildings shall be a minimum of forty (40) feet." The Board's decision did not provide any explanation as to why this requirement was not satisfied other than the bald conclusions that "the Applicant has not presented evidence" that the requirement is satisfied and "[t]here was no testimony to confirm compliance with Ordinance Section 502." (Doc. 27-23, at 22).

In reviewing the hearing transcript, the Court notes that there was in fact testimony that discussed the application's conformity to the requirements under Ordinance Section 502. The parties stipulated that the Ordinance Section 502 requirements were set forth in the M-1 Zoning District Regulations (Doc. 27, at ¶ 25; Doc. 31, at ¶ 25; Doc. 27-24, at 17). At the hearing, Verizon's witness and civil engineer, Eric Brinser, discussed information related to these requirements through the testimony regarding its proposed plans, the lot area, and the actual use area (Doc. 27-21, at 22:10-25:8). Furthermore, Verizon submitted a zoning plan to the Board, wherein it set forth the specific dimensions of its proposal, including the distances of each property line comprising the property, the compliance with lot width and depth requirements, and a table describing minimum yard requirements, the maximum building coverage, and the maximum impervious coverage. (Doc. 27-16). Again, in its decision, the Board failed to provide any explanation as to why this evidence, which is otherwise probative of compliance with the Ordinance Section 502 requirements, was ignored (contrary to the Board's finding that Verizon provided no evidence) or failed to satisfy the requirements under Ordinance Section 502. Thus, the Board's assertion that there was "no testimony" is incorrect because evidence exists on the record, contrary to the Board's finding.

As such, the Court finds that the Board failed to consider the relevant evidence on the record and provide an explanation for the weight it afforded to each piece of evidence. Therefore, the Board's denial premised on the conclusion that the Ordinance Section 502

requirement was not met cannot be characterized as based on substantial evidence.  *See APT Pittsburgh Ltd. P'ship*, 196 F.3d at 474-75.

Finally, the Board references, in support of its decision to deny Verizon's application, "a lack of compliance [*sic*] Sections 704(C)."  (Doc. 27-23, at 24).  Ordinance Section 704(C) requires that a Commission review the site design plan prior to the conditional use hearing on the following basis:

> In reviewing a site development plan for a conditional use hearing, the Commission shall take into consideration the design, location, and adequacy of traffic access, parking, landscaping, screening, illumination, and necessary public services and facilities and similar factors relating to the health, safety, welfare, comfort, and convenience of the public in general and of the residents of the immediate neighborhood in particular.

Ordinance Section 704(C).  The Board explained in its decision that "the Commission did make a recommendation to the Township Board of Supervisors that the conditional use be approved with conditions; however, there was no evidence presented that those conditions were met at the time of the hearing, especially the recommended condition that the Applicant produce a Report of Safety of the Tower (being in such close proximity to the airport)."  (Doc. 27-23, at 19-20).

As a threshold matter, to the extent that this Ordinance provision is based on the general welfare and conditions of the neighborhood, the Court has already concluded that such provisions are "general requirements" which Verizon does not bear the burden to demonstrate.  Thus, to the extent that this reason for denial is based upon Verizon's failure to prove general requirements, the Board's reason amounts to a legal error.

43

Putting that basis for concluding that the Board's reason for denial lacks substantial evidence aside, the Board did not cite to any provision of Ordinance Section 704 which states that an application can be denied on the basis of noncompliance with Ordinance Section 704(C) or on the basis of a failure to conform to each of the Commission's conditions prior to the hearing.  Further, the Board's decision is entirely vague as to what conditions remained unmet after Verizon revised its plans, other than the condition that the Applicant "produce a Report of Safety of the Tower." (Doc. 27-23, at 20).[4]  In fact, Verizon revised its plans pursuant to the Commissions' comments and systematically addressed and acknowledged each of the Commission's comments on Verizon's plan. (*See* Doc. 27-17).  During the hearing, Brinser, Verizon's civil engineer, specifically addressed the revisions Verizon made to its original proposed plans. (*See* Doc. 27-21, at 21:2-12, 36:6-16).  Again, the Board has failed to address any of this evidence pertaining to its proffered reason for the denial, i.e., that Verizon failed to consider the Commission's comments. Consequently, the Court cannot conclude that such reason for denying Verizon's application is based on substantial evidence. *See APT Pittsburgh Ltd. P'ship*, 196 F.3d at 474-75.

In light of the foregoing discussion, the Court finds that the Board did not provide reasons supported by substantial evidence on the record as to why the specific

---

[4] Because the issue of the safety related to the airport pertains to the general requirements of the Ordinance under Section 705(C), the Court will fully discuss the adequacy of Verizon's evidence with respect to the safety of the tower near the airport later in the Opinion, *see infra* pp. 45-49. However, the Court is of the view that Verizon provided uncontroverted evidence on the safety of the tower which the Board dismissed without an adequate explanation.

requirements under Section 705(B)(12), 502, and 704(C) were not met by Verizon's application.

### b. General Requirements

The Court similarly finds that the Board's denial with respect to the general requirements, i.e. under Ordinance Section 705(C) of the Ordinance, is not supported by substantial evidence.

To the extent that the Board's decision concluded that the application should be denied because Verizon failed to provide evidence with respect to the Ordinance Section 705(C) criteria, the Court finds that the Board erred as a matter of law. As discussed earlier, the Objectors bear the duty to provide evidence and burden to persuade the Board with respect to the health, safety, and general welfare of the neighborhood – i.e., the criteria set forth in Ordinance Section 705(C). In reviewing the decision, the Board's misapplication of the burden is apparent in the Board's written decision which states: "[w]hile Mr. Brisner testified that the tower will be built to comply with all applicable industry standards, he did not present any testimony regarding the criteria that shall be taken into consideration by the Township Board of Supervisors . . . as found in Ordinance Section 705 C(1)-(5)" (Doc. 27-23, at 10, ¶ 21); "[f]urther, Mr. Petersohn also did not present any testimony regarding the criteria that shall be taken into consideration by the Township Board of Supervisors . . . as found in Ordinance Section 705C(1)-(5)" (*id.* at 12, ¶ 32); "Ms. Manchel also did not present any testimony regarding the criteria that shall be taken into

consideration by the Township Board of Supervisors . . . as found in Ordinance Section 705 C(1)-(5)" (*id.* at 13-14, ¶ 39); and "the Board finds that the Applicant has not complied with all ordinance requirements; and if there has been ordinance compliance, there has not been sufficient evidence presented to protect the health, safety and general welfare of the present or future residents of Smithfield Township" (*id.* at 16, ¶ 50).  In sum, the Board with respect to each of Verizon's witnesses erroneously emphasized that they did not provide testimony with respect to the criteria under Ordinance Section 705(C).  This is incorrect as a matter of law.  Thus, the misapplication of the burdens supports the conclusion that the Board's decision is not based on substantial evidence.

However, the Board also contends that it concluded that the objectors met their burden to prove that the use would have a generally detrimental effect on health, safety, and welfare.  (*See* Doc. 25, at 16; Doc. 27-23, at 24, ¶ 7).  In reviewing the written decision and record, the Court finds that the Board's conclusion is not supported by substantial evidence.  *See APT Pittsburgh Ltd. P'ship*, 196 F.3d at 474-75.

In its decision, the Board set forth four reasons for denying Verizon's application related to the health, safety and general welfare: (1) proximity to the airport, (2) the detrimental or positive impact to adjacent properties, (3) the positive or negative impact on health, safety, and the wellbeing of the neighborhood, and (4) that the use will be developed in a manner consistent with the Ordinance and the Township's Comprehensive Plan.  (Doc. 27-23, at 20-23).  The Court finds that with respect to each reason, the objectors failed to

establish their objections with a sufficiently high degree of probability. Thus, the Board's denial based upon these reasons is not supported by substantial evidence. The Court more specifically addresses each reason below.

First, the core issue expressed in the underlying decision was the Board's concern with respect to the tower's proximity to the airport. As the Board explains in its decision, the proximity to the airport raises two principal concerns, which it concludes supports its decision to deny Verizon's application: air navigation safety and safety with respect to parachuters. (*See* Doc. 27-23, at 22 ("The use of an airport-especially an uncontrolled one-is fraught with many potential problems with take-offs, landings weather, terrain, novice pilots and novice parachuters. This is precisely why the Township has adopted an Airport Ordinance in addition to the customary zoning ordinance. There is no reason to compound those existing problems with another one problem . . . .")).

With respect to the air navigation safety concerns, Verizon submitted a "FAA Determination of No Hazard to Air Navigation" (Doc. 27-9), which states, "the structure would have no substantial adverse effect on the safe and efficient utilization of the navigable airspace by aircraft or on the operation of air facilities." (*Id.* at 2). In addition, Verizon submitted a "Notice of Proposed Construction or Alteration from the Pennsylvania Department of Transportation, Bureau of Aviation" (Doc. 27-10), wherein the PA Bureau of Aviation notes, "NO OBJECTION to the proposal, provided that the FAA does not object or determine the structure to be a hazard to air navigation." (*Id.* at 2).

Nonetheless, in concluding that the objectors met their burden of showing that air navigation safety was a concern, the Board rejected Verizon's FAA Determination and PA Bureau of Aviation determination. The Board's only basis for doing so was that "the 'no hazard' or 'no obstruction' letters that were received from the FAA and PA Bureau of Aviation dealt with a 130′ . . . and not a 100′ . . . tower." (Doc. 27-23, at 20). The Court notes that the FAA Determination specifically states "[a]ny height *exceeding* 130 feet above ground level will result in a substantial adverse effect and would warrant a Determination of Hazard to Air Navigation." (Doc. 27-9, at 2 (emphasis added)). Thus, by definition, 100 feet – as contemplated by Verizon's proposal – does not *exceed* 130 feet. Moreover, common sense dictates that an FAA determination that a 130-foot tower is not a hazard to air navigation also establishes that a 100-foot tower would not be a hazard to air navigation. The Board has cited to no authority or evidence on the record in support of its conclusion nor provided any other explanation as to why the FAA determination was inadequate to address the concerns with respect to air navigation safety. Notably, the Board did not discuss any objectors' testimony pertaining to air navigation safety which it credited over the FAA Determination and PA Bureau of Aviation Letter to reach the conclusion that the objectors met their burden to show that air navigation safety was a clear concern.

The Board also stated that it "adopted an Airport Ordinance," but it neither discussed how the Airport Ordinance was relevant to the concern at issue nor whether Verizon complied with the Airport Ordinance. (Doc. 27-23, at 22). Nonetheless, the Board

stipulated that Verizon complied with the Township's Airport Ordinance. (*See* Doc. 27, at 17, ¶ 38; Doc. 31, at 3, ¶ 38). Therefore, the Court, noting that Verizon complied with the Airport Ordinance, finds that it provides no support for the Board's justification for denying Verizon's application.

In light of the foregoing discussion, the Court finds that Verizon provided evidence regarding the air navigation safety, but neither the objectors nor the Board provided anything to the contrary, despite bearing the burden to do so. Accordingly, the Court cannot reach the conclusion that the Board's determination that the objectors demonstrated that air navigation safety was a serious concern was a basis for denial supported by substantial evidence.

The other basis for the denial emanating from the Board's concern with the proposed tower's proximity to the airport involved the safety of parachuters. (Doc. 27-23, at 23). In reaching its conclusion that the objectors established that Verizon's proposed use adversely affected the public health, safety, and welfare with respect to the parachuters' safety, the Board relied entirely upon the testimony of the three objector-citizens. For example, the Decision cites to an objector's letter, which raises the following concern:

> Mr. Root stated that the tower's location would present a safety hazard to flight patterns and beginner pilots. Moreover, he stated that over 1,000 parachute jumps are made every summer by novice or student jumper and it makes no sense to add complexity to the existing cite and terrain by adding obstacles around an airport.

Doc. 27-23, ¶ 43).

The Decision also references the following, regarding the testimony of another objector:

> A one Becky Ozgun offered testimony as a resident of a nearby Lake Valhalla and as Vice President of the Lake Valhalla Home Association. She also believed the cell tower is dangerous as it would create a safety issue where she has seen parachuters fall in trees and gliders fall into Lake Valhalla.

(*Id.* at ¶ 45).

The Court finds that such unsupported, lay opinion testimony is entirely speculative and, without any additional evidence or support, does not "show 'a high degree of probability that [the cell tower] will [substantially] affect the health and safety of the community.'" *Manor Healthcare Corp. v. Lower Moreland Twp. Zoning Hearing Bd.*, 590 A.2d 65, 71 (Pa. Commw. Ct. 1991) (citing *In re O'Hara's Appeal*, 131 A.2d 587, 596 (1957)). By relying solely on the objectors' completely speculative testimony with respect to the safety issue involving parachuters, the Board's conclusion cannot be based on substantial evidence. "The objectors cannot meet their burden by merely speculating as to possible harm . . . ." *Id.* Pennsylvania state courts have concluded that testimony of objectors with respect to "mere possibilities" does not meet the substantial evidence requirement required to support a zoning hearing board's findings. *Id.; see also Broussard*, 831 A.2d at 772; *H.E. Rohrer, Inc.*, 808 A.2d at 1018. In light of the weight of authority rejecting speculative testimony to satisfy objectors' burden with respect to the general requirements, the Court cannot find that the Board's conclusion – that the objectors have presented sufficient evidence to establish that the concern regarding the parachuters and

the cell tower "adversely affecting health, safety and general welfare" – was supported by substantial evidence.

Second, the Board cites to Ordinance Section 705(C)(1) and states, "there was no testimony as to whether the project has a detrimental or positive impact on adjacent properties or whether the use would have a negative impact on property." (Doc. 27-23, at 20). Ordinance Section 705(C)(1) provides, "[w]hether the proposed use will have a detrimental or positive impact on adjacent properties. A new use should not produce a significant negative impact on the property values of adjacent properties nor should it create potential nuisance impacts related to noise, odors, vibrations or glare." The Board's bald conclusion that "there was no testimony" is belied by the record. In its own review of the record, the Court identified testimony relevant to Ordinance Section 705(C)(1) regarding the potential of noise to be generated by the Tower. Brinser, Verizon's Civil Engineer, testified that he did not anticipate the tower's generator to create any noise. (*See* Doc. 27-21, at 31:9-11). The Court also identified relevant testimony from Verizon that the tower/structure would be far from the property lines, which would diminish that the impact on adjoining properties. (*See id.* at 42:10-20). Thus, there *was* relevant testimony.

Additionally, in its decision, the Board does not reference any evidence or testimony that the objectors – who bear the burden of providing evidence on this issue – provided on this issue. The only relevant testimony discussed by the objectors was with respect to the Tower's potential falling, as discussed earlier in this Opinion. However, the Board did not

cite to such testimony, and this Court concluded earlier in this Opinion that such testimony was speculative and by itself does not satisfy the objectors' burden on this issue. Thus, the Board's position – that it relied on substantial evidence in reaching this conclusion – is undercut by the Board's failure to consider the probative evidence on the record and afford an explanation as to the weight, if any, that evidence deserves. As such, the Board's decision with respect to this issue cannot be characterized as based on substantial evidence.

Third, the Board rejected Verizon's application on the basis that "[t]here was also no testimony that the use will have a positive or negative effect on the environment, job creation '...or any other factors which reasonably relate to the health, safety and general welfare of the present or future residents of...Smithfield Township." (Doc. 27-23, at 21 (citing Ordinance Section 705(C)(3)). In support of its reasoning, the Board does not cite to any testimony presented by the objectors, who retain the burden of proving this point. Moreover, to the extent that this basis for denial relates back to the concerns with respect to the airport and the parachuters, the Court has already concluded that such basis for the Board's decision was not supported by substantial evidence. Finally, the Court notes that the Board did not address the relevant testimony on the record that relates to the positive or negative effect on the environment and job creation. For example, there was testimony regarding the lack of a need for any personnel to operate the facility, i.e., the use will likely have no impact on job creation. (Doc. 27-21, at 30:12-14). Instead, the Board concluded

that there was "no testimony," thereby demonstrating that the Board did not review the entire record or explain its reasoning for rejecting evidence on the record. Accordingly, this basis for rejecting the application is not supported by substantial evidence. *See APT Pittsburgh Ltd. P'ship*, 196 F.3d at 474-75.

Finally, in its decision, the Board premises its denial in part on Ordinance Section 705(C)(5) and states "[t]here was also no testimony as to whether the use will be developed and improved in a way which is consistent with the Ordinance or the Township's Comprehensive Plan." (Doc. 27-23, at 21). The Court finds that this basis for denial is not supported by substantial evidence. The purpose of Verizon's proposed use – "communications centers/towers" – is clearly listed by the zoning regulation under the M-1 Industrial District classification as a conditional use. (*See* Doc. 27-24, at 17). The Court finds that there is no evidence of record that the impact of the cell tower differs from the impact correlated with other uses allowed within the M-1 Industrial Zoning District. Moreover, the Board cites to no such evidence presented by the objectors and provides no explanation in its decision as to why the impact would differ in a manner inconsistent with the Ordinance. Without further explanation, the Board's basis for denial based on its assertion that there was "no testimony" regarding Ordinance Section 705(C)(5) overlooks the fact that the proposed use is the exact use contemplated by the zoning ordinance itself. Moreover, the decision does not reference any testimony or evidence presented by the objectors, who bear the duty to provide evidence on this point, to suggest that the proposed

use was inconsistent with the Ordinance or the Township's Comprehensive Plan.  For these reasons, the Court finds that the Board's denial on this basis is not supported by substantial evidence.  *See APT Pittsburgh Ltd. P'ship*, 196 F.3d at 474-75.

In light of the foregoing discussion, the Court finds that at every turn the Board's reasons for denying Verizon's application with respect to the "general" requirements are not supported by substantial evidence.  "The counter obligation of presenting evidence with respect to a general detriment to health, safety, and welfare lies with the objector.  The objector must show that any adverse impact as a result of the proposed use is abnormal, and that there is a high probability of occurrence."  *Stein v. Easttown Twp. Bd. of Supervisors*, 532 A.2d 906, 910 (Pa. Commw. Ct. 1987).  As noted throughout this Opinion, the objectors did not make these showings: they failed to establish, by a high probability, the potentially adverse impact that Verizon's cell tower would have on the community.  *See id.*  Accordingly, the Court cannot find that the Board's denial, insofar as it was premised on the criteria set forth under Ordinance Section 705(C), is supported by substantial evidence.

With the foregoing findings, the Court concludes that the Board's decision to deny Verizon's application is not supported by substantial evidence.  In fact, the Court was unable to find "even one reason given for denial [that] is supported by substantial evidence." *N.Y. SMSA Ltd. P'ship*, 2010 WL 3937277, at *4.  Thus, the Court will grant summary judgment on the claim under 47 U.S.C. § 332(c)(7)(B)(iii) in favor of Verizon.

## B.  *Zoning Board Appeal*

Verizon also presents its claim as an appeal of the Board's decision under Pennsylvania Municipalities Planning Code, 53 P.S. § 10101 *et seq.*  The Court notes that Verizon's claim is nearly identical to its substantial evidence challenge under the TCA. Other courts, in reviewing similar claims, have found that a court "has, effectively, decided the state law claim in deciding the TCA claim."  *Zoning Hearing Bd. of Butler Twp.*, 247 F. Supp. 3d at 535; *see also Horvath Towers III, LLC v. Zoning Bd. of Montoursville*, No. 4:16-cv-00421, 2016 WL 6087860, at *6 (M.D. Pa. Oct. 18, 2016) ("Because this Court has found plausibility concerning Plaintiff's TCA 'substantial evidence' claim, the same result is logically required for Plaintiff's analogous state-law based zoning appeal.").  Accordingly, in the interest of judicial economy and convenience, the Court will grant summary judgment in favor of Verizon.

"Where a court does not hear or take additional evidence, the decision of a local zoning board will be overturned only where the board committed an error of law or abused its privilege."  *Zoning Hearing Bd. of Butler Twp.*, 247 F. Supp. 3d at 535 (citing *Hertzberg v. Zoning Bd. of Adjustment of Pittsburgh*, 721 A.2d 43, 46 (Pa. 1998)).  "An abuse of discretion will only be found where the zoning board's findings are not supported by substantial evidence."  *Hertzberg*, 721 A.2d at 46.  The *Hertzberg* court defines substantial evidence in the context of a zoning appeal as requiring "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*  Here, for the

reasons discussed in this Opinion, the Court has already found that the Board's decision is not supported by substantial evidence in violation of 47 U.S.C. § 332(c)(7)(B)(iii). As such, the Court will grant Verizon summary judgment on the state law zoning board appeal.

## 2. Prohibition of Service under TCA

Verizon also contends that the Board's denial of the application "has the effect of prohibiting wireless service" in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II). (Doc. 28, at 28). The Board contends that it "has not engaged in any effort to prohibit or create the effect of prohibiting the provision of personal wireless services but simply wants the tower away from the airport." (Doc. 25, at 19). In light of the Court's conclusion that the Board's decision was not supported by substantial evidence, the Court finds that the prohibition of service claim is rendered moot.

As the court in *T-Mobile Northeast LLC v. City of Lawrence* explained:

Under the TCA, the Court may order injunctive relief if the defendant violates either the "substantial evidence requirement" or the "effective prohibition ban". Thus, having found that summary judgment will enter for the plaintiff with respect to the substantial evidence claim, the Court need not address the effective ban claim.

755 F. Supp. 2d 286, 292 (D. Mass. 2010) (emphasis in original); *see also Indus. Commc'ns. & Elecs., Inc. v. Town of Alton*, 2012 WL 4343759, at *104 (D.N.H. September 21, 2012) (determining that effective prohibition claim rendered plaintiffs' substantial evidence claim moot); *ATC Realty, LLC v. Town of Kingston*, 173 F. Supp. 2d 118, 129

(D.N.H. 2001) ("Having determined that the plaintiffs are entitled to an injunction that will afford them full relief, I decline to address the plaintiffs' prohibition and state law claims. Accordingly, the parties' cross-motions for summary judgment as to those claims will be denied as moot.").

Here, the Court has found that the written decision did not satisfy the procedural requirements set forth by the TCA, i.e. the Board's decision was not supported by substantial evidence. *See* 47 U.S.C. § 332(c)(7)(B)(iii). On those grounds, the Court will afford Verizon its full relief. Thus, in line with the above-discussed case law, and because Verizon will be afforded its full relief, the Court declines to address Verizon's prohibition of service claim.

## V. REMEDY

The TCA makes clear that it expects expeditious resolution of zoning disputes on the part of local authorities and courts enforcing federal limitations. *See* 47 U.S.C. § 332(c)(7)(B)(v) (requiring that District Courts "hear and decide such action[s] on an expedited basis."). While the TCA does not specify a remedy for violations, "the majority of district courts that have heard these cases have held that the appropriate remedy is injunctive relief in the form of an order to issue the relevant permits." *See Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 497 (2d Cir. 1999) (citing to district court cases that have applied this remedy and concluding that injunctive relief is appropriate); *see also Omnipoint Corp. v. Zoning Hearing Bd.*, 20 F. Supp. 2d 875, 881 (E.D. Pa. 1998) (rejecting

the remedy of remand because "such an action would frustrate TCA's intent to provide aggrieved parties full relief on an expedited basis").

Here, the Court determined that the Board's decision was not supported by substantial evidence in violation of the TCA. See 47 U.S.C. § 332(c)(7)(B)(iii). Thus, the Court finds that an order to grant the application is appropriate.

## VI. CONCLUSION

For the reasons outlined above, with respect to the substantial evidence claim under the TCA and the state law claim under the MPC, the Court will grant Verizon's motion for summary judgment on the, and the Board's motion for summary judgment will be denied. The remaining TCA claim involving the probation of service will be deemed moot and will be dismissed without prejudice. Furthermore, the Board will be ordered to grant Verizon's application.

An appropriate Order follows.

Robert D. Mariani
United States District Judge